UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVY STRYKER *et al.*,

     Plaintiffs,

v.                                        Civil Case No. 24-11538
                                          Honorable Linda V. Parker
                                          Mag. Judge Kimberly G. Altman

FCA US LLC,

     Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF NO. 22) AND DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS (ECF NO. 22)

On September 6, 2024, Ivy Stryker *et al.* ("Plaintiffs") filed this amended complaint against FCA US LLC ("Defendant") alleging breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and seventy-eight counts of various state law claims. (ECF No.10 at PageID 529-715.) Presently before the Court is Defendant's Motion to Compel Arbitration and Motion to Dismiss filed on October 28, 2024 (the "Motion"). (ECF No. 22.) Plaintiffs submitted a Response to the Motion on December 12, 2024 (ECF No. 27.), and Defendant filed a Reply to Plaintiffs Response on January 17, 2025. (ECF No. 28.) Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan

Local Rule 7.1(f).  For the reasons stated below, the Defendant's Motion to Compel Arbitration is denied without prejudice and the Defendant's Motion to Dismiss, contained therein, is denied without prejudice.

### I.      Factual History

Defendant is an American automotive manufacturer and a licensed distributor of Chrysler, Dodge, Jeep, Ram, Alfa and Fiat brand motor vehicles.  (ECF No. 10 at PageID 423.)  Plaintiffs are consumers who purchased vehicles produced by the Defendant and made said purchases between the years of 2018 and 2024.  (ECF No. 22 at PageID 770-74.)   The parties agree that the present Motion to Compel Arbitration is limited to a subset of Plaintiffs, namely, those who did not voluntarily dismiss their claims against Defendant and also purchased vehicles manufactured in 2020 and beyond.  (*Id.* at PageID 777; ECF No. 27 at PageID 1203.)

Defendant asserts that the vehicles purchased by Plaintiffs came with written warranties and Plaintiffs acknowledge that their vehicles were under warranty.  (ECF No. 22 at PageID 777; ECF No. 10 at PageID 516.)  Defendant presented evidence that the warranties are located in a warranty booklet (the "Booklet") which is typically provided in the same model-year vehicles purchased by the Plaintiffs.  (ECF No. 22-2.)  Defendant also presented evidence that an arbitration provision ("the Provision") is included in the Booklet.  (*Id.* 3-13.)  The Provision states in relevant part:

Please carefully read this voluntary binding arbitration provision, which applies to any dispute between you and FCA US LLC and its affiliates[.] . . . [Y]ou agree that any dispute arising out of or relating to any aspect of the relationship between you and FCA US LLC will not be decided by a judge or jury but instead a single arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules in effect at the time you signed the Agreement to Arbitrate. . . . You may opt out of arbitration within 30 days of taking delivery of the vehicle and signing the Arbitration Acknowledgement Form at the dealer. To opt out of the binding program, send a letter to FCA US LLC[.] . . . If you do not opt out, then this agreement to arbitrate is binding.

Plaintiffs do not dispute that the Booklet contains the Arbitration Provision. (ECF No. 27 at 1203-06.)  Rather, Plaintiffs allege that they never assented to the Provision because they never received a copy of the Booklet (ECF Nos. 27-2, 27-3, 27-5, 27-7, 27-13), were not presented with a Booklet before or during their transactions, were unaware of the Provision in the Booklet before or during their transactions, were never informed about the Provision by Defendant, did not consent or agree to the Provision when purchasing their vehicles, and did not learn about the Provision until Defendant called attention to it in its current Motion. (ECF No. 27 at PageID 1203-06.)  Plaintiffs submitted declarations to that effect to supplement their Response to the Defendant's Motion to Compel Arbitration.  (*E.g.*, *Id.* at PageID 1247-48.)

## II.    Standing

Before deciding on a motion to compel arbitration, a court must first determine that it has subject matter jurisdiction. A party may petition for an order compelling arbitration in "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the two parties[.]" 9 U.S.C. § 4. The phrase, "save for the arbitration agreement" implies that district courts should assume the absence of the arbitration agreement and determine whether it "would have jurisdiction under title 28" without it. *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009). Thus, the Court must first assess whether it has subject matter jurisdiction over the underlying dispute. *See e.g.*, *Pacheco v. Ford Motor Co.*, 2025 WL 2255623 (E.D. Mich. Aug. 7, 2025).

Article III of the United States Constitution provides that federal courts may exercise jurisdiction over an actual "case or controversy." U.S CONST. art. III, § 2. In order for a case or controversy to exist, the plaintiff must have "standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). To establish standing under Article III, the plaintiff must plead facts that show: (1) they suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) is likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61. To establish an injury in fact, a plaintiff must demonstrate that they suffered "an invasion of a

legally protected interest" that is "concrete and particularized" and "actual or imminent," rather than "conjectural or hypothetical." *Id.* at 560.

The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.* Here, Plaintiffs bear this burden. Given that the present matter is at the pleading stage, the Court will view all facts alleged in the Complaint as true, and Plaintiffs must present sufficient facts for the Court to determine that they have plausibly alleged standing. *See id.* at 561.

**A. Injury in Fact**

Defendant argues that Plaintiffs lack standing because they: (1) have not alleged an injury in fact sufficient for standing and (2) have not established that Plaintiffs' proffered injury is fairly traceable to Defendant. (ECF No. 22 at PageID.780-83.)

Here, Plaintiffs base their injury in fact argument on a theory of overpayment. (ECF No. 27 at PageID.1198, 1206-07, 1209.) Specifically, Plaintiffs allege that Defendant misrepresented that the Class Vehicles complied with federal standards, and that Defendants made representations regarding the adequacy of the Class Vehicles' immobilizer system; while knowing that without adequate anti-theft protections, it was possible for thieves to make electronic master keys and steal the Class Vehicles. (ECF No. 27 at PageID.1198.) Plaintiffs also allege that they would not have purchased their vehicles if not for Defendant's misleading statements and

omissions regarding the vehicles' safety features.  Plaintiffs maintain that they have not received the benefit of their bargain due to their vehicles' susceptibility to theft. (ECF No. 27 at PageID.1202, 1207.)

Taking Plaintiffs' facts as true, Plaintiffs have plausibly alleged a theory of overpayment.   Courts in the Sixth Circuit have recognized that claims of overpayment are cognizable injuries in fact.  *See Speerly v. Gen. Motors*, *LLC*, 143 F.4th 306 (6th Cir. 2025); *see also Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 694 (E.D. Mich. 2020) ("The prevailing jurisprudence in this district . . . holds that a consumer who alleges she would not have purchased a vehicle (or would have paid less for it) had the manufacturer not misrepresented the vehicle to customers' detriment or omitted mention of its significant limitations, has alleged a plausible injury-in-fact."

When district courts have found that a plaintiff has not plausibly alleged a theory of overpayment, the facts are distinguishable.  *See, e.g*, *Johnson v. FCA US, LLC*, 2023 WL 2577228 at *4 (E.D. Mich. Mar. 20, 2023) (finding that defendant never misled plaintiffs at point of purchase because Defendant never promised that class vehicles would deploy all airbags; rather, defendant explicitly stated that the airbags would "deploy as (and if) necessary.")

Here, Plaintiffs are not merely relying on general allegations that they suffered an injury because Defendant's could have created a "safer or better" option for

consumers.  (ECF 22 at PageID.780; ECF No 27 at PageID.1208.)  Rather, Plaintiffs allege that they relied on specific statements from Defendant regarding the functionality of the immobilizer system and the exclusivity of the key fobs that came with the Class Vehicles, as well as representations regarding the Vehicles' compliance with federal standards, all of which induced Plaintiffs' purchase. (ECF No. 27 at PageID.1207.)  For example, Plaintiffs allege to have relied on statements including, but not limited to: (1) "this vehicle conforms to all applicable U.S.A. federal motor vehicle safety standards in effect on the date of manufacture shown above"; (2) "[a] unique, embedded key code matched only to your vehicle helps keep your Grand Cherokee safely where it belongs"; (3) "[t]he Sentry Key Immobilizer system prevents unauthorized vehicle operation by disabling the engine"; (4) "only key fobs that are programmed to the vehicle can be used to start and operate the vehicle. The System cannot reprogram a key fob obtained from another vehicle"; and (5) "the system will not allow the engine to crank if an invalid Key Fob is used to start and operate the vehicle. The system will shut the engine off in two seconds if an invalid Key Fob is used to start the engine. (ECF No. PageID.434-37.)

Plaintiffs rest their claim of injury on overpayment at the point of purchase, so all Plaintiffs who made a purchase under these facts experienced an injury. Defendant's effort to challenge standing by separating Plaintiffs into groups (those who have experienced theft, those who experienced attempted theft, and those who

have not suffered either) is unconvincing and unnecessary.  *See Raymo*, 475 F.Supp.
3d at 693 (discussing *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015))
("[B]ecause plaintiffs' theory was that the manufacturer 'falsely advertised to every
purchaser' of the production, if the product was defectively designed 'then every
purchaser was harmed.'"))  Taking all of Plaintiffs' facts as true, the Court finds that
Plaintiffs have demonstrated an injury in fact and have satisfied the first element to
establish standing.

Plaintiffs can satisfy the traceability element by showing that there is a
"causal connection" between their alleged injury and Defendant's challenged
conduct.  *Lujan*, 504 U.S. at 560.  Regarding traceability, Defendants argue that
those Plaintiffs who have suffered vehicle theft or attempted theft, fail to proffer
sufficient details to connect those injuries with Defendant's challenged conduct.
(ECF No. 22 PageID.782.)  However, this argument ignores the basis of Plaintiff's
overarching injury in fact argument.  The injury pleaded by Plaintiffs is *overpayment
at the point of sale*, which was induced by Defendant's alleged omissions and
misleading statements regarding the vehicle's safety features.  This injury does not
involve a third party and, if true, is directly traceable to Defendant's conduct.[1]

---

[1]One could contrast these facts to those present in *Wiater v. Stellantis* and arrive at
the same conclusion.  2024 WL 4339983 at *2 (E.D. Mich. Sept. 27, 2024)
(finding that plaintiff's alleged injury of car theft was not traceable to defendant's
conduct when the theft was the result of an unidentified third party and plaintiff
provided no facts that tied their alleged missing safety systems to the theft.)

Finally, Plaintiffs' injuries can be redressed by a favorable decision from this Court. In its prayer for relief, Plaintiffs ask for a mixture of both legal and equitable remedies, all of which could be granted if the Court finds for Plaintiffs on its claims. (ECF No. 10 at PageID.715-16.)

Plaintiffs have plausibly pleaded all elements of standing and have established an active case and controversy. Now, having determined that the Court possesses Article III jurisdiction, the Court may next assess Defendant's motion to compel arbitration.

## III.    Standard of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C § 2, provides that:

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable.

The FAA thus "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (internal citations omitted).

When considering a motion to compel arbitration under the Act, the court must make four determinations: (1) the parties agreed to arbitrate; (2) the scope of that agreement encompasses the dispute; (3) if federal statutory claims are asserted,

whether Congress intended for those claims to be nonarbitrable; and (4) if some, but not all, of the claims in the action are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *See Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

Only the first determination — whether the parties agreed to arbitrate — is at issue. Notwithstanding the presence of a delegation clause, "[a] challenge to arbitration agreement formation is always in the jurisdiction of the courts." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300, (2010)). The Court applies "ordinary state-law principles that govern the formation of contracts" to determine whether an arbitration agreement has been formed. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under Michigan law, "[t]he party seeking to enforce a contract has the burden of showing that it exists." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (citing *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 504 (1992)). Therefore, the Defendant must first "carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *In re StockX*, 19 F.4th at 881.

Section 4 of the FAA directs that if the "making of the agreement for arbitration . . . is not in issue," the court shall direct "the parties to proceed to arbitration," however, "[i]f the making of the arbitration," . . . be in issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.  To determine whether the existence of an agreement is "in issue," this Court applies the standard for summary judgment. *In re StockX*, 19 F.4th at 881; *see also Frisch v. FCA US LLC*, No. 2:24-CV-10546, 2025 WL 1592935 (E.D. Mich. June 5, 2025).

## IV.    Applicable Law and Analysis

Courts review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007).    The parties do not dispute that Michigan law governs, and both cite Michigan law in their briefs.  (ECF No. 22 at PageID 777-78; ECF No. 27 at PageID 1204-05; ECF No. 28 at PageID 1312-13.) Michigan law requires an offer and acceptance to form a contract.  *Hergenreder*, 656 F.3d at 417 (quoting *Pakideh v. Franklin Com. Mortg. Grp.*, Inc., 540 N.W.2d 777, 780 (1995)).   What constitutes an offer or acceptance under Michigan law is summarized by the Sixth Circuit in *Hergenreder*:

> "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." . . . "Similarly, an acceptance sufficient to create a contract arises where the individual to whom an offer is extended

manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Hergenreder*, 656 F.3d at 417 (quoting *Kloian v. Domino's Pizza LLC,* 273 Mich. App. 449, 733 N.W.2d 766, 770-71 (2006)).

"Whether the parties have mutually agreed to be bound [by contract] 'is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'"   *Id*.   In the present matter, the parties dispute whether they mutually agreed to be bound by the Arbitration Provision, that is, whether a sufficient offer and acceptance was present to form the contract.

### a.  Defendant failed to satisfy its burden of proving mutual assent.

The proponent of a contract must prove its existence by a preponderance of the evidence, including a "meeting of the minds."  *In re StockX*, 19 F.4th at 881 (quoting *Huntington Nat. Bank v. Daniel J. Aronoff Living Tr.*, 305 Mich. App. 496, 508 (2014)).  Issues may be waived "when they are raised for the first time . . . in replies to responses," or where a party made only vague, brief references to them before the district court.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *see also Berera v. Mesa Med. Grp.*, 779 F.3d 352, 361 (6th Cir. 2015).  This rule applies both on appeal and in trial court. *See, e.g.*, A*merican Family Prepaid Legal Corp. v. Columbus Bar Assoc.*, 498 F.3d 328, 335 (6th Cir.2007); *see also Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730-31 (M.D. Tenn. 2019).

Here, the Defendant has failed to satisfy its burden of proving mutual assent between the parties regarding the Arbitration Provision.  In its Motion Brief, the Defendant states, "the written warranties for all model-year 2020+ vehicles — including those purchased by Plaintiffs . . . require arbitration of any dispute arising out of or relating to any aspect of the relationship between [Plaintiffs] and FCA US." (ECF No. 22 at PageID 778.)  However, merely stating that the Arbitration Provision *exists*, without more, does not necessarily equate to a showing that Plaintiffs *assented* to the Arbitration Provision.[2]

Defendant attempts to meet its burden by providing a Declaration stating that the Booklet containing the Arbitration Provision is provided with all general model-year vehicles purchased by the Plaintiffs.  This, too, is insufficient, as it does nothing to prove that the Plaintiffs, *specifically*, received and assented to the Provision within the Booklet.  This factual gap is enforced by several Plaintiffs' Declarations that they never received a copy of the Warranty Booklet.  (*See* ECF Nos. 27-2, 27-3, 27-5, 27-13.)

---

[2] *See, e.g.*, *Smith v. Chrysler Fin. Corp*, 101 F. Supp. 2d 534 (E.D. Mich. 2000) ("Adequate notice to persons who may be bound by an arbitration proceeding is a necessary element to a fair adjudication and, consequently, necessary for enforcement of an arbitration provision."); *see also Hergenreder*, 656 F.3d  at 420-21 (6th Cir. 2011)(finding that plaintiff did not assent to arbitration because, although she had general awareness that a dispute-resolution process existed, plaintiff had no knowledge of the arbitration language or defendant's desire to bind her to an arbitration agreement.)

The Court is not convinced that the Defendant, in its Motion Brief, proved a "meeting of the minds" between the parties by a preponderance of evidence. *In re StockX*, 19 F.4th at 881. Arguments that are subsequently raised in the Defendant's Reply Brief are waived and immaterial. The underlying rationale for the rule has been cogently explained:

> "Reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived." *Scottsdale Ins. Co.*, 513 F.3d at 553.

Consequently, the Court finds that Defendant has not carried its initial burden to produce evidence that would allow a reasonable jury to find that an agreement to arbitrate exists.

**b. Plaintiffs have put mutual assent "in issue."**

Even assuming, *arguendo*, that Defendant met its initial burden of proving mutual assent, Plaintiffs have successfully put contract formation "in issue." "To determine whether the existence of an agreement is 'in issue' this court applies the standard for summary judgment." *In re StockX*, 19 F.th at 881 For Plaintiffs to "establish a 'genuine' dispute over whether [they] accepted the contract," they must "present specific facts, as opposed to general allegations, that would allow a rational trier of fact to find that [they] did not acknowledge the agreement or learn about the

arbitration condition . . . in other ways." *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 839-840 (6th Cir. 2021). An unequivocal denial that takes the form of admissible evidence can create a genuine dispute of fact. *Id.* 3 F.4th at 840. Indeed, at this stage, courts must view factual conflicts in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). Consequently, a party can "obtain a trial under FAA § 4 with a sworn denial that the party ever . . . received arbitration materials." *Boykin*, 3 F.4th at 840.

The Sixth Circuit and this Court have found that motions to compel should not be granted when there exists a genuine dispute between the parties regarding the question of assent. *See Hergenreder*, 656 F.3d at 420-21 (holding that the district court erred in granting the defendant's motion to compel when facts indicated that plaintiff was not reasonably notified of the agreement) *see also Frisch*, 2025 WL 1592935 at *8 (E.D. Mich. June 5, 2025) (denying defendant's motion to compel and ordering limited targeted discovery on contract formation questions.)

Here, the Plaintiffs have submitted sworn declarations (the "Declarations") that establish the following: 1) they were not presented with a Warranty Booklet before or during their transactions; 2) no sales representative referenced the Booklet, or any arbitration clause contained in it before or during their transactions; 3) they did not see —and were not informed of — an arbitration provision contained in the Booklet before or during their transactions; and 4) they did not consent or agree to

any arbitration provision when they purchased their vehicles. [3] (ECF No. 27-2.) Notably, Plaintiffs Cardin, Curb, Laskowski, Patelli and Wozniak deny ever receiving a copy of the Warranty Booklet. (ECF Nos. 27-2, 27-3, 27-5, 27-7, 27-13.)

Viewing the facts in favor of the nonmoving party, the Court finds that the Plaintiffs' sworn denials are sufficient to demonstrate a genuine issue of material fact regarding their alleged assent to the Arbitration Provision, as well as their receipt of and access to the Warranty Booklet. *Boykin*, 3 F.4th at 840. Thus, the Court finds it appropriate to deny the Defendant's Motion to Compel Arbitration.

## V.    Conclusion

Accordingly, **IT IS ORDERED**, that Defendant's Motion to Compel Arbitration (ECF No. 22.) is **DENIED WITHOUT PREJUDICE** and the Defendant's Motion to Dismiss, contained therein, is **DENIED WITHOUT PREJUDICE**. (ECF No. 22).

The Court acknowledges the possibility that other evidence may exist to prove that Plaintiffs agreed to the Arbitration Provision, or confirmed receiving a copy of the Warranty Booklet, and by effect, the Arbitration Agreement. Therefore, **IT IS**

---

[3] The Court acknowledges that, in the Sixth Circuit, evidence demonstrating that Plaintiffs availed themselves of the benefits provided in the broader agreement demonstrate mutual assent. *Hergenreder*, 656 F.3d at 420. However, these facts are not present. The Court also notes that Plaintiffs have not availed themselves of the Booklet's warranties via allegations in their Complaint, as the warranties in the Booklet are specifically related to *manufacturing defects*, rather than the design defects alleged by the Plaintiffs. (*See, e.g.*, ECF 22-7, PageID.947; ECF No. 27 at Page ID 1235.)

**HEREBY ORDERED** that the parties conduct limited targeted discovery on the issue of contract formation, including the Defendant's methods for ensuring that Plaintiffs received the Warranty Booklets, and Plaintiffs' receipt of, or access to, the Warranty Booklets containing the Arbitration Agreement.

**IT IS FURTHER ORDERED** that the period of discovery on these issues shall last no longer than 90 days and shall be completed on or before December 29, 2025.  Counsel for the Parties are **ORDERED** to appear for a Status Conference following the completion of limited discovery on a date in January 2026, to be determined by the Court. On the determined date, Counsel for the Parties shall inform the Court of the status of completed limited discovery, as well as any further need to seek arbitration in this matter.

**SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: September 30, 2025