## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

IVY STRYKER *et al.*,

           Plaintiffs,

      v.

FCA US LLC,

           Defendant.

Case No.: 2:24-cv-11538-LVP-KGA

Honorable Linda V. Parker

Magistrate Judge Kimberly G. Altman

## FCA US LLC'S REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION TO COMPEL CERTAIN PLAINTIFFS TO ARBITRATION

## A.   Arbitration Is Required Based On Purchase/Lease Agreements.

Plaintiffs do not dispute eleven of them signed purchase or lease agreements requiring arbitration of all disputes and delegating threshold issues to the arbitrator.[1] They also do not deny Sixth Circuit precedent[2] holds only an arbitrator – and not this Court – can decide threshold issues, such as who may enforce the agreements.

Instead, Plaintiffs argue this binding precedent should be ignored based on *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). *See* Pl. Opp., pp. 17-23 (PageID.5021-27). But, in *Coinbase*, the Supreme Court simply held that "where … parties have agreed to *two* contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." 602 U.S. at 152 (emphasis in original). And, the Supreme Court reaffirmed that, absent such a contractual conflict, **"courts must send all arbitrability disputes to arbitration."** *Id.* (emphasis added).

Plaintiffs do not even argue such a conflict exists here, and the cases they cite all involved situations with conflicting contracts or are from out-of-circuit courts.[3]

---

[1] *See* Plaintiffs' Response in Opposition to Defendant FCA US LLC's Renewed Motion to Compel Arbitration ("Pl. Opp."), ECF #40, pp. 17-24 (PageID.5021-28).

[2] *See, e.g.*, *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020).

[3] *See, e.g.*, *Tachi-S Eng'g U.S.A., Inc. v. Canoo Techs. Inc.*, 2025 WL 253046, **2, 5 (6th Cir. 2025) (issue before the court was "whether the NASA Agreement … superseded the Collaboration Agreement[]," since the later contract conflicted and did not contain any arbitration provision).

Moreover, Judge Leitman recently analyzed – and rejected – Plaintiffs' exact argument in *Fisher*.[4]  Arbitration should therefore be compelled on all the claims asserted by Bush, Cardin, Jones, Mora, Morrill, Patelli, Pire, Soberano, Stryker, Tegeler, and Wozniak based on their purchase/lease agreements.

**B.**     **Arbitration Is Also Required Based On The Warranties.**

*Notice* – Plaintiffs argue they can avoid arbitration under their vehicles' warranties based on a lack of "adequate notice."  *See* Pl. Opp., pp. 4-9 (PageID.5008-13).  But, those warranties are contracts formed at purchase when Plaintiffs paid for their benefits.  *See, e.g.*, *Gen. Motors Corp. v. Dept. of Treas.*, 644 N.W.2d 734, 735 (Mich. 2002).  Such at-purchase contracts – including all their terms, limitations, and requirements (such as arbitration) – are agreed to and fully enforceable as long as notice of the contract's existence and a reasonable opportunity to return the product or opt-out are given.  *See* ECF #36, pp. 16-20 (PageID.1407-11).

There is not some special rule that physical copies of contracts with arbitration provisions must be handed to purchasers (rather than made available at a dealership), or that some additional notice must be given regarding arbitration provisions, above

---

[4]*See Fisher v. FCA US LLC*, 769 F.Supp.3d 587, 605-06 (E.D.Mich. 2025) (explaining *Coinbase* only permits a court to address delegation issues where there are "two contracts, one that calls for binding arbitration and a second that provide[s] the Court [is] the proper forum for the parties' dispute," and compelling arbitration because when "Plaintiffs signed and executed those sales contracts, they accepted all parts of the contracts, including the Delegation Clauses").

and beyond other contract terms.  Indeed, any law or rule imposing such heightened requirements for enforcing arbitration provisions would plainly violate the FAA. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339-40 (2011).

Here, nine Plaintiffs admit they knew written warranties existed for their vehicles at purchase – indeed, Pire admits she "***read*** the warranty" "within one week after purchasing the vehicle," Mora "***read*** portions of the warranty … online within a month after purchas[e]," and Crayton and Patelli reviewed the warranties' terms with dealership personnel.[5]  Eight admit reviewing window stickers directing them to "[a]sk Dealer for a copy of the limited warranties."[6]  Six admit reviewing owner's manuals with links to the warranties on the outside cover.[7]  All assert claims based

---

[5]**Admit They Knew Written Warranties Existed:  Cardin:** Ex. D, ECF #36-5, p. 3 (PageID.1443); **Crayton:** Ex. G, ECF #36-8, p. 3 (PageID.1454); **Kwak:** Ex. M, ECF #36-15, p. 3 (PageID.1476); **Laskowski:** Ex. Q, ECF #36-20, p. 3 (PageID.1496);  **Mora:** Ex. T, ECF #36-23, p. 3 (PageID.1512); **Patelli:** Ex. X, ECF #36-27, p. 3 (PageID.1531); **Pire:** Ex. AA, ECF #36-30, p. 3 (PageID.1542); **Wozniak:** Ex. KK, ECF #36-42, p. 3 (PageID.1600); **Yarrington:** Ex. NN, ECF #36-45, p. 3 (PageID.1614) (emphasis added).

[6]**Admit They Reviewed Window Stickers:  Cardin:** Ex. D, ECF #36-5, p. 3 (PageID.1443); **Crayton:** Ex. G, ECF #36-8, p. 3 (PageID.1454); **Kwak:** Ex. M, ECF #36-15, p. 3 (PageID.1476); **Laskowski:** Ex. Q, ECF #36-20, p. 3 (PageID.1496); **Mora:** Ex. T, ECF #36-23, p. 3 (PageID.1512); **Patelli:** Ex. X, ECF #36-27, p. 3 (PageID.1531); **Pire:** Ex. AA, ECF #36-30, p. 3 (PageID.1542); **Wozniak:** Ex. KK, ECF #36-42, p. 3 (PageID.1600); *see also* Exs. C, F, L, P, S, W, Z, JJ (ECF ##36-4, 36-7, 36-14, 36-19, 36-22, 36-26, 36-29, 36-41).

[7]**Admit They Reviewed Owner's Manual:  Cardin:** Ex. D, ECF #36-5, p. 3 & Ex. CCC, ECF #38-3, pp. 312 & back cover (PageID.1443, 4320, 4334); **Mora:** Ex. T, ECF #36-23, p. 3 & Ex. AA, ECF #37-9, pp. 368 & back cover (PageID.1512, 2982, 2996); **Patelli:** Ex. X, ECF #36-27, p. 3 & Ex. BBB, ECF #38-2, pp. 281 &

on averments that FCA US failed to disclose the alleged defect in, *inter alia*, its "warranties," "stickers," and "owner's manuals." *See, e.g.*, ECF #18, ¶ 250(d) (PageID.839). And, six ***used*** the warranties to obtain free repairs.[8] That Plaintiffs now say they do "not recall reading the arbitration provision," or did not read the warranties they knew existed and were available, is irrelevant.[9] One cannot escape a contract by choosing not to read it. *See* ECF #36, pp. 20-23 (PageID.1411-14).

While Plaintiffs point to *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411 (6th Cir. 2011), it presented the exact opposite circumstances as here. There, the Sixth Circuit analyzed: (1) an employee handbook both parties agreed was ***not*** a contract (it explicitly said it created no "contractual obligation[s]" for either party); and (2) a separate pamphlet of arbitration "procedures" that was ***never "made ... available"*** to the plaintiff. *Id.* at 417-19.[10] Thus, the court did not address the rules for where an actual contract exists and both parties are aware of it. Even

---

back cover (PageID.1531, 3992, 4005); **Pire:** Ex. AA, ECF #36-30, p. 3 & Ex. XX, ECF #37-8, pp. 362 & back cover (PageID.1542, 2595, 2611); **Tegeler:** Ex. FF, ECF #36-36, p. 3 & Ex. DDD, ECF #38-4, pp. 366 & back cover (PageID.1575, 4703, 4719); **Wozniak:** Ex. KK, ECF #36-42, p. 3 & Ex. EEE, ECF #38-5, p. 253 & back cover (PageID.1600, 4703, 4719).

[8]*See* Exs. H-1, H-2, N-1, N-2, BB-1, BB-2, GG-1, GG-2, OO-1, OO-2, PP-1, PP-2 (ECF ##36-9, 36-10, 36-16, 36-17, 36-31, 36-32, 36-37, 36-38, 36-46, 36-47, 36-48, 36-49) (warranty repair records).

[9]*See, e.g.*, Ex. AA, ECF #36-30, p. 3 (PageID.1542) (Pire); *supra* at fn.5.

[10]*Compare Mannix v. Cnty of Monroe*, 348 F.3d 526, 537 (6th Cir. 2003) (posting policy on "internal database available to employees" *was "reasonable notice"* and created enforceable contract (emphasis in original)).

4

so, the court noted the outcome "might be different" if the plaintiff was "notified" of the procedures' existence or if they had been made "available." *Id.* at 418.

But, here, there is no dispute the warranty contracts exist, most Plaintiffs admit they knew of those warranties, and some even admit they read the warranties (Pire and Mora) or reviewed them at a dealership (Crayton and Patelli). As Judge Kumar explained in *Grundy v. FCA US LLC*, 2024 WL 1699500 (E.D.Mich. 2024), the notice required to create a binding contract from a warranty can occur in many ways, including by viewing federally-mandated "window stickers" or just "being shown a document … at the dealership" about the warranty. *Id.* at **5-6 & fn.9. Since such notice has been admitted here, arbitration is required.

   **The "Internal Documents" Arguments** – That FCA US urges its dealerships obtain and keep signed acknowledgement forms to "ensure the enforceability of the arbitration clause" is hardly surprising – after all, this would certainly help prevent plaintiffs like Pire and Mora, who admit reading the warranty, from later claiming they had no notice of arbitration. *See* Pl. Opp., pp. 10-12 (PageID.5014-16). Nor is it incorrect to describe arbitration as "voluntary," since purchasers can (using the method described in the warranty) opt-out. *See* ECF #36, p. 7 (PageID.1398).

To the extent Plaintiffs are trying to argue no warranty contract was created if an acknowledgement form went unsigned, that is not the law. *See, e.g.*, *Higgs v. Auto. Warranty Corp. of Am.*, 134 Fed.Appx. 828, 829-30 (6th Cir. 2005); *Gen.*

5

*Motors*, 644 N.W.2d at 735.  And, since Plaintiffs never saw or relied on the internal presentations, they obviously could never prevail on any estoppel-type argument about FCA US's purported "own interpretation."  *See* Pl. Opp., p. 12 (PageID.5016); *Johnson v. FCA US LLC*, 721 F.Supp.3d 554, 564-65 (E.D.Mich. 2024).

**Use of the Warranty** – Plaintiffs argue they can avail themselves of the warranties' benefits (free repairs) while ignoring other provisions in the same contracts they do not like (arbitration).  *See* Pl. Opp., pp. 12-17 (PageID.5016-21). But, this notion has been rejected by the Sixth Circuit and a host of other courts.[11] This rule arises both from basic fairness (the law does not allow parties to pick and choose among a contract's provisions, or create some new contract *á la carte* with only those terms they prefer) as well as logic (a party using a contract cannot reasonably claim they lacked notice of that contract or never agreed to it).

None of Plaintiffs' cited cases suggest a purchaser who has used a warranty to receive free repairs can evade that contract's other terms.[12]   And, while the

---

[11]*See, e.g.*, *AtriCure, Inc. v. Meng*, 12 F.4th 516, 527 (6th Cir. 2021); *see also Grundy*, 2024 WL 1699500, at *5 (analyzing claims under a variety of different circumstances – including some plaintiffs who claimed "no notice" of warranty's provisions, did not receive a copy, and never received any later notices about it – and holding "purchasers who take advantage of a warranty cannot later disavow the application of the warranty's terms, even if they did not receive a copy of those terms"); *see also* ECF #36, pp. 23-25 & fn.15 (PageID.1414-16).

[12]*See* Pl. Opp., p. 14 (PageID.5018); *see also Thornton v. Uber Techs., Inc.*, 858 S.E.2d 255, 259 (Ga.App. 2021) (user downloaded app, but no indication he ever tried to use any provision in contract); *Hobbs v. Tamko Building Prods., Inc.*, 479

evidence of warranty usage FCA US submits would be entirely unnecessary if they were pursuing a claim for breach of the warranties in this case,[13] Plaintiffs cite no case holding it matters which portions of the warranties they have utilized, or which types of repairs they have received.[14]  On this basis, too, arbitration is required.

Respectfully submitted,

**KLEIN THOMAS LEE & FRESARD**

|  |  |
|---|---|
| | _/s/ Thomas L. Azar,_ Jr. |
| Fred J. Fresard (P43694) | Stephen A. D'Aunoy (MO/54961) |
| Ian K. Edwards (P82021) | Thomas L. Azar, Jr. (MO/56634) |
| 89 Kercheval Ave. | Sarah K. Molina (MO/60606) |
| Grosse Pointe Farms, Michigan 48236 | 100 N. Broadway, Ste. 1600 |
| fred.fresard@kleinthomaslaw.com | St. Louis, Missouri 63102 |
| ian.edwards@kleinthomaslaw.com | steve.daunoy@kleinthomaslaw.com |
| | tom.azar@kleinthomaslaw.com |
| | sarah.molina@kleinthomaslaw.com |

_Counsel for Defendant FCA US LLC_

---

S.W.3d 147, 150 & fn.6 (Mo.App. 2015) (plaintiff just "kept and used the shingles," so court "**d[id] not reach** Tamko's estoppel argument that 'having asserted a claim under [the warranty] … [he] cannot now deny the contract exists" (emphasis added)); _Martin v. Comcast of Cal./Colo./Fla./Or., Inc._, 146 P.3d 380, 389 (Or. App. 2006) (simply analyzing whether a contract could be created through "inaction" based on plaintiff receiving a "bill stuffer" with their bill).

[13]_See, e.g._, _Rojas v. Bosch Solar Energy Corp._, 443 F.Supp.3d 1060, 1073 (N.D.Cal. 2020) (plaintiffs "invoked" warranty by suing over alleged breach, so were bound by all of its terms).

[14]Plaintiffs' suggestion Pire and Crayton did not use their warranties (_see_ Pl. Opp., p. 16 (PageID.5020)) is disproven by the evidence:  both received free repairs _in addition to_ the recall software updates and other service listed in the invoices. **Crayton:** Ex. H-1, ECF #36-9 (PageID.1456) (free battery replacement); Ex. H-2, ECF #36-10 (PageID.1461) (warranty claim summary report showing this and other free repairs); **Pire:** Ex. BB-1, ECF #36-31 (PageID.1550, 1554) (free replacement of coolant heater and timing chain tensioner); Ex. BB-2, ECF #36-32 (PageID.1557-58) (warranty claim report showing this and other free repairs).

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 16, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

 */s/ Thomas L. Azar, Jr.*